IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARRELL MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-218-AMG |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darrell Martin ("Plaintiff") brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR"). (Docs. 7, 8). The parties have briefed their respective positions. (Docs. 21, 27).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 12). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.   The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see also id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe

impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if he is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S.Ct.

---

[2] RFC is "the most [a claimant] can do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History

On February 8, 2018, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of December 15, 2017. (AR, at 72, 73). The SSA denied the applications initially and on reconsideration. (*Id.* at 72, 73, 118, 119). An administrative hearing was then held on March 12, 2020. (*Id.* at 35-71). The Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 7-26). The Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6). Thus, the ALJ's decision is the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**III.     The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2017, the alleged onset date. (AR, at 12). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of degenerative disc disease osteoarthritis, inflammatory arthritis, and obesity. (*Id*. at 13). At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then determined that Plaintiff had the RFC to perform the full range of medium work. (*Id.* at 14). At Step Four, the ALJ found Plaintiff could perform past relevant work as a semi-truck driver and oilfield truck driver, as well as other jobs existing in significant number in the economy, including laborer-salvager, floor waxer, and auto detailer. (*Id.* at 20-22). Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the SSA. (*Id.* at 22).

**IV.     Issues Presented for Judicial Review**

Plaintiff contends that the ALJ erred in considering the medical opinions of Dr. Clark and Dr. Self. (Doc. 21, at 4-17). Plaintiff further asserts the ALJ erred by not developing the medical record. (*Id.* at 17-21).

**V.     Analysis**

   **A.     The ALJ Erred By Not Developing the Record.**

Plaintiff contends the ALJ erred by not obtaining test results relating to Plaintiff's rheumatoid arthritis and not inquiring further of a treating physician about Plaintiff's pain medications. (*Id.* at 19). The Court agrees.

"The Tenth Circuit has discussed the balance that must be struck in a disability determination between a claimant's burden to prove her claim and the Commissioner's burden to develop the record." *Shortnacy v. Colvin*, 2014 WL 4716075, at *3 (W.D. Okla. Aug. 26, 2014), *report and recommendation adopted*, 2014 WL 4716055 (W.D. Okla. Sept. 22, 2014). In *Maes v. Astrue*, 522 F.3d 1093 (10th Cir. 2008), the Court explained:

> In making a determination regarding disability, the ALJ "shall develop a complete medical history," which includes a "reasonable effort" to obtain records from the claimant's treating physician. 42 U.S.C. § 423(d)(5)(B). Regulations clarify this statutory duty. Specifically, 20 C.F.R. § 404.1512(d) states that "before we make a determination that you are not disabled, we will develop your complete medical history." That regulation also makes clear, however, that the social security claimant has an obligation to assist the ALJ in its duty:
>
>> (a) General. In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.
>> ....
>> (c) Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.
>
> 20 C.F.R. § 404.1512(a), (c).
>
> Given this statute and regulation, we have explained that the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. A social security disability hearing is nonadversarial, however,

> and the ALJ bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised. Thus, an ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.

*Id*. at 1096 (10th Cir. 2008) (alterations, citations, and internal quotation marks omitted). *See also Wright v. Berryhill*, 2017 WL 3951607, at *4 (W.D. Okla. Sept. 8, 2017) ("The SSA expressly requires the ALJ to 'make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.'") (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). "The *Maes* court further explained that when a claimant is represented by counsel, the ALJ may rely upon the claimant's counsel to structure the claimant's case and to identify any issue requiring further development." *Shortnacy*, 2014 WL 4716075, at *3 (citing *Maes*, 522 F.3d at 1096). But "[w]hen a claimant is unrepresented at the hearing, or is represented by a non-attorney, the ALJ's duty to develop the record 'is particularly acute.'" *Id*. (quoting *Miracle v. Barnhart*, 187 F. App'x 870, 874 (10th Cir. 2006)). Regulations provide that

> [w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

20 C.F.R. § 404.950(d)(1).

In the administrative proceedings, Plaintiff was represented by Jeffery L. Owen, a "non-attorney representative." (AR, at 10). It appears that Mr. Owens "represents Social Security claimants, including Plaintiff, in a professional capacity . . . [;] [n]onetheless, the

undersigned has assumed that the ALJ was under a heightened duty in this case due to Plaintiff's lack of representation by a licensed attorney during the administrative proceedings." *Shortnacy* 2014 WL 4716075, at *4.

During the administrative hearing, the ALJ stated repeatedly that the medical record was incomplete, specifically regarding Plaintiff's arthritic conditions and use of pain medications. Moreover, she expressed concern that she could not fairly adjudicate the case without further records. The transcript includes the following statements from the ALJ:

- "I'm concerned" that the Plaintiff's case "may just be a record in development and have to come back." (AR, at 47).

- "I think we need more clarity about what type of arthritis the gentleman has, because I've got one record that says rheumatoid arthritis, when we have clearly no lab studies or anything like that to give us that diagnosis. Then I have another one that talks about osteoarthritis. Then another one, which that CE, that goes well no, maybe it's polyarthritis . . . . And to base a decision one way or another on this, I just don't think is fair." (*Id.*)

- "[T]here's just a lot of conflicts in this record and I think we need to figure out how to sort them out." (*Id*. at 48).

- The ALJ expressed a desire to ask a treating physician "[w]hy have you put this gentleman on such a high level . . . of these pain medications? . . . I want to put [Dr. Self] on the spot and go how did you come up with that?" (*Id*. at 51).

- When Plaintiff testified about having arthritis in his knees and ankles, the ALJ stated, "yeah, I definitely think we need to give you a chance to develop your record more. . . . I really want to give you guys a fair shot on this." (*Id*. at 59).

- The ALJ indicated she wanted to issue interrogatories to Dr. Self and/or Dr. Lawrence (*id*. at 59), and stated, "[s]o I'm putting down updated records is what I'm going to call it and then questions to doctor on why these drugs, why they went to that level. I think that's got to be a fair question we ask them." (*Id*. at 60).

8

- "I just know that we have to have a secure record to support your decision. . . . We have to answer [ ] with records and we can't just say well his treating doctor said that." (*Id*. at 61).

- "[T]he good thing about hearings is they give us a chance to see what's important, in the sense of what we know, but also what we don't know or don't have set up and that's why I'm doing what I'm doing, it it's a big old hint that I need a more complete record." (*Id*. at 70).

The ALJ specifically asked Plaintiff whether he had undergone blood tests to diagnose his arthritis, and Plaintiff testified in the affirmative and that the tests were done through Integris in Oklahoma City as well as Salt Plains Medical Center in Cherokee, Oklahoma, and by Dr. Self. (*Id*. at 48). Ultimately, the ALJ directed Plaintiff's representative to provide "updated records," "questions to doctor on why these drugs and other answers on functioning," and "records on rheumatoid diagnoses" by June 1. (*Id*. at 62).

The record indicates that Plaintiff did submit additional office treatment records from Dr. Self subsequent to the hearing. (AR, at 26) (referencing Exhibit 8F). The ALJ referred to these records once in the decision, only to note that Dr. Self began treating Plaintiff in 2012. (*Id*. at 19). In her decision, the ALJ stated, "[t]he claimant testified he underwent testing at Integris Hospital in Oklahoma City and at Cherokee Salt Plains Medical Center that showed positive results for rheumatoid arthritis. The claimant's representative was advised to submit that evidence. Despite waiting over three months since the hearing, the claimant submitted no further evidence." (*Id*. at 10). However, the ALJ herself had "the duty to develop the record by obtaining pertinent, available medical records which c[a]me to [her] attention during the course of the hearing." *Maes*, 522 F.3d at 1096. This duty was "particularly acute" since Plaintiff was represented by a non-

9

lawyer. *Miracle*, 187 F. App'x at 874. The ALJ's own commentary at the administrative hearing demonstrates that the additional evidence was relevant to her ability to determine the claim fully and fairly, and she possessed the power to obtain those records when they were not provided by Plaintiff's representative. *See* 20 C.F.R. § 404.950(d). She failed to do so. Accordingly, the ALJ's decision is not supported by substantial evidence, and reversal is required.

### B. The Undersigned Does Not Reach the Remaining Issues.

The analysis on remand may be affected by the ALJ's consideration of Plaintiff's additional medical records. Thus, the undersigned does address Plaintiff's remaining arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VI. Conclusion

For the reasons discussed above, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further development of the record and further proceedings.

ENTERED this 12th day of August, 2022.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE